Good morning, Your Honor's counsel. I'm here. My name is Todd Leventhal. I'm with Leo Flangus, co-counsel. We represent Mr. Ling. The issue here today- How do you pronounce the- I had guessed it, Liang, but what's the- Ling. Ling. L-I-N-G. That's very good. Thank you. The issue here today is whether the judge correctly enhanced Mr. Ling's sentence under 3B1.3, where he got a two-point upward departure under special skills. Now, the government claimed at the sentencing hearing, as well as in their reply brief, that the special skill that Mr. Ling had was extraordinary eyesight while he was gambling and using cheating methods while he was playing back rack and other card games at the casino. Now, this circuit in U.S. v. Lee stated that a special skill must be a skill not possessed by the general public, and it requires substantial education and training. The government replied- The government stated that Ling's extraordinary eyesight alone is not the special skill, but an element of a special skill. And they combined that extraordinary eyesight along with his training and practice in cheating at cards, and then they found- they packaged it, then they found they got a special skill. Nowhere in the guidelines suggests that they could package anything. The guideline says special skill, not special skills. It's not a totality test. It's one test, and it's definitely not a test that eyesight would come under. Eyesight, obviously, is possessed by the general public. We all- most of us can see. And there's no evidence at all. There's no doctor reports. There's nothing at all that suggests that Mr. Ling's eyesight was extraordinary. In terms of his cheating methods, the- Is there any showing as to what it was, like 20-20 or something like that? No, there's no showing. In terms of the cheating methods that the- Mr. Ling employed, dobbing cards. Dobbing cards is merely taking Vaseline on a finger, putting it on a card, and it shimmies. So then he would know, or the group would know, what that card would be when it came out of the shoe the next time. It's not a- Did the district court rely on that skill? The district court, in their ruling, it was very- it was ten lines long. The district court- In volumes? No, ten lines. Basically said that because they did it so well, it must have been sophisticated. But there was no factual finding as far as what the judge stated at the sentencing hearing as to why. You mean exactly what the special skill is? That's correct. The judge never stated as to what special skill he was referring to. He just said, well, they got away with it, and they got away with it pretty good, so it must have been special. They must have had some training. The other technique that they used was crimping cards. Crimping cards is nothing more than taking a card and moving it so that, again, they know sort of what card is different from the rest. The government also claims that they used sophisticated codes. You know, these guys weren't creating Morse code here. All one guy would do was bet big, and the rest would follow. Or he would bet small, and the rest wouldn't follow. That's all they were doing. That was their code. It wasn't sophisticated. It was very simple. Anybody can be taught this. This circuit stated in U.S. v. Lee that only where defendant's skills are particularly sophisticated do they correspond to the code's example of special skills. Now, the code has examples, doctors, lawyers, accountants, demolition experts. Now, I understand that this list is not exhaustive, and obviously other trades come in. But can we really put cheating and gambling into this list when you're just dobbing a card? I don't think so. I don't think crimping a card even corresponds to the training that a lawyer goes through or a doctor goes through to get there. There's two other points I'd like to make that happened at the sentencing hearing. First of all, the court noted that it takes a substantial education, training, and licensing. Yet two sentences later, the court said, and I think there was some training. Some training is definitely not substantial. That's quite lower than what substantial is. Substantial training means four years, months, which what an attorney would go through, a doctor. The judge basically just lowered the bar and said, well, I think there's some training here. Secondly, the judge stated that in order to maintain consistency, I will give Mr. Ling the two points upward departure. Now, this maintain consistency was in response to the government reminding the court that the court had given a two-level enhancement to another defendant. I don't know if it was weeks or days before, but he did give it to another defendant in the case. And so all the judge was doing was maintaining consistency, giving two-level. The attorney at that sentencing hearing was not privy to any of the facts or circumstances that that other defendant or why the other defendant received the two-level enhancement, and therefore, this was completely wrong for the judge to do this. I'm going to. You may do so. That's fine. Thank you very much. We'll hear from the government. May it please the court. Good morning. My name is Justin Roberts. I'm an assistant United States attorney from the District of Nevada. The court below did not abuse its discretion when it applied a two-level enhancement for special skill under sentencing guideline section 3B1.3. As is clear from the record, excerpt of record page 79, the court followed the two-part approach that was outlined by this court in the Lee decision and also followed application note 3 to that particular guideline section and said that the skill that Mr. Lee had was one that was both not possessed by the general public and was also a skill that required substantial training. Now, the appellant argues that the only thing that was there. What's the evidence in the record or in the probation report about, you know, the substantial training? I'm sorry, Your Honor. What's the evidence before the district court, either at the sentencing hearing or in the probation report or somewhere? Your Honor. What special training was required and received by the defense? Excerpt of record 43 is Mr. Lange's claim at random. And there, under penalty of perjury, he stated that he had trained and practiced extensively to be able to accomplish this skill. Quote, We received training to conduct the cheats and practice our cheat techniques. Quote, We bet in patterns so that we could maximize our winnings. Those are Mr. Lange's own statements. An excerpt of record 43. That was before the court at the time of sentencing. In addition to the arguments that were put forward, the court. Who was that? Who was the recommendation? The probation officer. The probation officer. On this issue. They did not recommend this enhancement. Well, was he silent about it or, you know, or recommend against it? I believe from the record, Your Honor, that they stood silent on the issue. And your office didn't file a written sentencing memorandum seeking the upward departure, did it? I believe the way that it played out and is clear in the record is that, as part of Mr. Lange's plea agreement, it was clear that this was an enhancement that would be argued at the time of sentencing. Mr. Lange was one of a number of defendants. But your office didn't alert the judge in any written sentencing memorandum as to its contentions and positions and to why this departure would be warranted, notwithstanding the rulings in the Green case, in the Maynard case, in the Lee case, in the Harper case, that people with considerably greater sophistication and training and skills, as I at least currently evaluate it, were not entitled, should not have been subjected to those departures. The trial judge was confronted with the notion that the sentence should be enhanced for the first time orally at the sentencing. Is that correct? Well, it's not correct, Your Honor, because it was stated in the plea memorandum and the district court made clear that the defendant and the court were aware from the plea memorandum that this was an issue that would have been argued and that the defendant, the court found below the defendant was not prejudiced by the non-filing of that motion because he was given notice that it was going to be coming forward at sentencing. Moreover, the defendant – I'm not suggesting that there was an issue of fairness to the defendant in terms of advance indication as to what your office would plan. I'm just asking whether you gave the trial judge sufficient information, both factual and legal, to prepare the judge to consider this enhancement before he showed up in court for the sentencing. Well, Your Honor, this was a – I was not counsel below, but this was a multi-count RICO indictment that had been before the court. Isn't there either a yes or no answer to that question that I just asked? The question is whether there was sufficient information before the court to apply this enhancement. And my answer is yes, there was at the time, because the court had the defendant's plea memorandum in which he stated that he had been trained to accomplish this. There was the indictment before the court and other defendants had been before the court for purposes of sentencing. This wasn't a stand-alone offense of Mr. Lange by himself. He was part of a group. Indeed, the entire group relied upon his skills to accomplish the offense. I understand correctly that the U.S. attorney offered no showing on this. Is that what you told us earlier? There was no motion filed. That's correct. Okay. So there was an oral argument provided at sentencing in addition to the plea memorandum, the indictment that were before the court and the other defendants that had been before the court. Mr. Roberts, I want to get back to what the special skill in this case is. And, you know, you just read from, I guess, the plea agreement. But that's sort of like a special skill of cheating, right? Our cases indicate that the special skill has to be a legitimate skill that's abused for an illegitimate purpose. In other words, you know, if you have a special skill as a bank robber, that's not the kind of special skill that this guideline recognizes. And from what you read in the plea agreement, you know, it's a skill of how to cheat, which is not the kind of special skill the guideline seems to contemplate under our cases. Well, the cases that state that it has to be a legitimate preexisting skill come out of the Young decision from the from the D.C. Well, talk about nine circuits for us. Well, in the Peterson decision, there's also language that suggests that it does not only need to be a preexisting legitimate skill, but it's also a skill that can be translated to legitimate use. And the skill that you say the defendant admitted in the plea agreement is, you know, a wholly illegitimate one. Just a skill of cheating. Right. Well, it's the skill at playing cards and playing the statistical advantage. It's a skill that cheating at cards. It's a skill that cheating at cards. Right. That's not no different than the skill that robbing the bank. Is it? No, Your Honor. That's not what it was. It was it was not a standalone offense. It was his actions, his abilities to do certain tasks in conjunction with other members of the group that caused the offensive success. And under the Peterson decision enabled the group to victimize a number of well across North America. Let me ask the question this way. What's the argument that this is a quote in the terms of, you know, our case law, a legitimate skill? Well, in the appellant's brief at page five, he he indicates that he he's been playing cards for most of his adult life and that. Well, that's it. I mean, you're not talking about the skill he, you know, admitted to. Well, the skill that was the training he got, he says. Well, the skill that was for the court was the training at the game of backer and blackjack. In addition to these other techniques that were used, including his eyesight, including his ability to do certain tasks in conjunction with the other members of the group. The skill was his ability to take advantage of his knowledge of the games and work with his with others to gain a statistical advantage. It's not like the green case where it's a do it yourself kit one time offense where you learn how to manufacture counterfeit and do it one time. This was an offense that took place from 1994 to 1999. The defendant admitted that he did this in 1994 in Las Vegas, in 1996 in Las Vegas, in 1996 in South Lake Tahoe, in 1996 in Atlantic City, in 1999. Again, in Las Vegas, he admitted he made it work with respect to those dates that he had been a part of a group and used his his training to commit the offense. The training that he had received on the card playing and his from his, I believe, training from an individual by the name of Y Sang Fung. The whole group went to these various casinos and worked together in conjunction with their separate skills to commit the offense. And I would just ask the extent that the record isn't clear enough as to what was before the court. If this court doesn't find the record to be clear enough on what what the court was relying upon and using this enhancement, I'd ask that it be remanded for further fact finding. Thank you, counsel. Mr. Eleventhall, you have some reserve time. My understanding of the government's claim is that it's not the gambling that's the skill. It was the daubing of the cards. That's the skill of the daubing or the crimping. They seem to be saying that he's kind of a systems guy that's learned how to defeat the casinos in a studied effort over time, 94 to 99, for example. What's your response? He did learn, but he also got caught at it, too. So it wasn't foolproof. And the way that they cheated the casino, again, was not 100 percent foolproof. It merely gave them odds. They often lost, too. I mean, it increased their odds a little bit. You know, they won big, but they also lost sometimes. Isn't your isn't your best response that to the extent there was concerted activity that involved practicing with his cohorts in this criminal scheme? That was already built into the guidelines for the sentencing on the Rico card. That's correct. He's already being punished and he already pled guilty to that portion of it. So he's already doing the time for that. He's doing 27 months right now for the cheating, which has already been built in this special skill of eyesight plus daubing and crimping. It's not sophisticated and it's not a legitimate, legitimate skill. How much additional time is at stake on these two points? There's two point six months. So he's doing 27 months. You know, I would just say that if you know, just as an analogy, if a man had had small hands and he went to hot wire car, you know, and he had knowledge of how to hot wire car, you know, does he get an increase on special skill because of his hands? You know, eyesight would be the same thing, even if he does have good eyesight. But I mean, any of us can go out, we can go buy glasses and we can get to that 20, 20 vision, even if he does have the 20, 20 vision. So it's not a skill that's not possessed by the general public. Thank you. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Tashima, Matz